IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID HERNANDEZ,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS<br><br><br><br>Case No. 2:07-CR-56 TS |

I.  INTRODUCTION

This matter is before the Court on Defendant's Motion to Suppress.  The Court held two evidentiary hearings and received extensive post-hearing briefing.  The Court has reviewed the entire record and denies the Motion for the reason that the officers obtained valid consent to enter the apartment and to search Defendant's room.

II.  FINDINGS OF FACT

On the evening of January 5, 2007, West Valley City Narcotics Detective Attridge (the Detective) and Narcotic Detective Sergeant Hudson (the Sergeant) were conducting surveillance of an apartment in West Valley City (the apartment).  They had observed an individual, known to the officers to be a drug distributor and wanted person, enter the

apartment empty handed and leave with something. When that individual was subsequently detained, he was found to have a large amount of cash that he said was proceeds of drug trafficking. During the same day, officers had found cocaine in a Riverton, Utah house associated with this individual.

The first time the officers attempted to contact the apartment's occupants, no one answered. While they waited, they determined that a vehicle in the parking lot was associated with the apartment and called for a canine dog to "sniff" the vehicle. The dog alerted to the vehicle.

The officers eventually saw five individuals enter the apartment. Two of the individuals stayed about ten minutes and left.

Around 9:30 p.m., the Detective and Sergeant knocked on the front door of the apartment. Another officer was nearby but remained out of sight at the initial contact. Two additional officers remained in the parking lot.

The apartment was leased by Defendant's mother (Ms. Hernandez) and her boyfriend (Mr. Boggess). They had been out to dinner earlier in the evening and returned shortly before the officers knocked a second time. Mr. Boggess answered the door. The officers were in plain clothes, with their badges visible on chains around their necks. They were armed but their weapons were not visible.

The Detective smelled a strong odor of burnt marijuana when Mr. Boggess opened the door. The Detective requested permission to enter. Mr. Boggess asked the officers to wait while he consulted his girlfriend. He returned to the door with Ms. Hernandez. The Detective told them he could smell the marijuana and requested entry. Mr. Boggess

opened the door wide, and he and Ms. Hernandez stepped back, as if inviting them in. The Court finds that this gesture was nonverbal consent to enter.

Once inside, the officers asked if anyone else was in the apartment. Ms. Hernandez indicated that her son was present. Her son, Defendant, then entered the living room and the officers told him to sit on the couch. Two of the waiting officers came in to watch Defendant.

The officers explained their suspicion that the apartment was involved in drug trafficking and asked permission to search the apartment. Defendant hung his head, looked dejected, and told the officers that they could go and get his stuff. The officers understood "stuff" to be vernacular for narcotics. The Detective confirmed with Defendant that he was giving permission to search his room.

Defendant had his own room in the apartment; it had a lock and was often kept locked. Mr. Boggess had a key to Defendant's room, but had not used it.

The Detective spoke with Mr. Boggess alone on the balcony regarding the consent form but Mr. Boggess was reluctant to sign a consent form without Ms. Hernandez' agreement. Ms. Hernandez came out to the balcony and agreed to sign.

The officers determined who the leaseholders were for the purpose of signing a consent form. The Detective then went to his vehicle to obtain a consent form. While he was gone, Mr. Boggess told the Sergeant that he had a user amount of marijuana in their bedroom. When the Detective returned with the consent form, Mr. Boggess and Ms. Hernandez then sat at the kitchen table while they signed the form. The Detective did not

ask Defendant to sign the consent form because Defendant was not a lease holder and the officer understood that Defendant was a temporary guest.

At the time he obtained the consent form, the Detective had the home phone number of a state court judge for the purpose of obtaining a telephonic search warrant of the vehicle in the parking lot. The officers had been in contact with the judge earlier in the day to obtain a warrant and expected, based upon the circumstances, that they would be able to quickly obtain a warrant if the apartment's occupants did not consent.

The encounter at the apartment was pleasant and cordial, with Ms. Hernandez making a joke at one point. The officers did not display weapons, raise their voices, or act in any threatening or forceful manner. The officers did not search the apartment until after the form was signed.

The Court finds the officers' testimony to be credible. The Court finds the testimony of Mr. Boggess and Ms. Hernandez to not be credible. The Court notes that Ms. Hernandez has previously been convicted of obstruction of justice, a factor affecting her credibility. Ms. Hernandez' and Mr. Boggess' disputed testimony that the Court finds to be not credible includes, but is not limited to, the following: that the Detective put his foot in their door; that any officer displayed his gun at any time; that, when the officers entered, Boggess protested that he had told them to stay outside; that an officer told them to sit down and shut up; that the officers began searching Defendant's room before the consent form was signed; that Defendant never gave permission to search his room; that the officers damaged property; that the officers obtained the written consent form by threatening that if it was not signed the officers would hold the apartment's occupants for

hours or prosecute them for the marijuana; that the officers told Mr. Boggess and Ms. Hernandez they might as well sign the consent form as the officers had already found incriminating evidence; that the consent form was not filled out before it was signed; and, that the officers said they could not get a hold of a judge to issue a warrant.

### III.  DISCUSSION AND CONCLUSIONS

Defendant moves to suppress evidence on the grounds that (1) the officers entered an apartment where he was living without either a warrant or consent; (2) the officer's did not have consent to search Defendant's room; and (3) even if Defendant gave consent to search his room, the search was tainted by the initial warrantless entry.

The government contends that there was consent to enter the apartment and to search Defendant's room.  In addition, the government contends that the evidence may also be admitted under the inevitable discovery doctrine.

The Tenth Circuit has discussed the government's burden in the present motion:

> In cases challenging a warrantless entry leading to an arrest, the burden is on the government to (1) "present clear and positive testimony that consent was unequivocal and specific and freely and intelligently given"; and (2) "show that the police did not coerce the defendant into granting his consent."[1]

The present motion boils down to a credibility determination.  In support of his argument that the officers were not credible, Defendant makes much of the fact that it was about 20-25 minutes between when the officers entered and the consent form was signed. The Court does not find this significant.  During this time, the officers entered, encountered

---

[1] *United States v. Gonzales,*  2007 WL 3225378, *3 (10th Cir. Oct. 26, 2007) (quoting *United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998)).

5

Defendant, spoke to Ms. Hernandez and Mr. Boggess individually and together, the Detective went to his vehicle to retrieve the consent form, returned, filled out the form, and obtained the signatures. The Court finds nothing in the timing that undermines the officers' testimony.

Having found that the officers' testimony is credible and that of Mr. Boggess and Ms. Hernandez is not, the Court turns to the issue of consent to enter the apartment. Consent to a warrantless entry is a factual determination that must be determined by the totality of the circumstances.[2] "Non-verbal conduct, considered with other factors, can constitute voluntary consent to search."[3] In *Gonzales*, *supra*, the Tenth Circuit has held such non-verbal consent may be valid consent for a warrantless entry. In *Gonzales*, the person giving verbal consent made a head and hand gesture in addition to standing back and opening the door.[4]

In the present case, the sequence of events reveals that the officers requested entry, the person answering the door took a moment to confer with the person he shared the apartment with, and then he opened the door and the occupants jointly stepped aside to indicate their permission to enter. The Court finds that although there was not vocal consent, it was freely and unequivocally expressed through the actions of Mr. Boggess and

---

[2] *United States v. Cruz-Mendez,* 467 F.3d 1260, 1265 (10th Cir. 2006).

[3] *Gonzales,* 2007 WL 3225378, *3 (10th Cir. Oct. 26, 2007) (quoting *Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998)).; *see also United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) (non-verbal consent to search locked bag).

[4] *Id.*

Ms. Hernandez in response to the Detective's request. The Court finds that the consent to enter was voluntary.

The Court next turns to the issue of consent to search.

Valid consent is that which is "freely and voluntarily given." Whether consent to search was in fact "voluntary" is a question of fact to be determined from the totality of all the circumstances.[5]

[F]actors to be considered in determining whether consent is freely and voluntarily given include: "physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant. . . ."[6]

The presence of multiple officers is not inherently coercive or dispositive to the inquiry.[7] In the present case, the atmosphere was cordial and calm and the officers did not display weapons. Based upon the totality of the circumstances of this case, the Court finds that the presence of multiple officers was not coercive.

For the reasons stated above regarding credibility, the Court finds that the consent to search by Ms. Hernandez and Mr. Boggess was freely and voluntarily given.

However, the Court agrees with Defendant that his consent was necessary to search his separate room because the government has not shown that any of the other occupants of the apartment had joint access or control over his separate room.[8] The Court

---

[5] *United States v. Brown*, 190 Fed. Appx. 704, 708, 2006 WL 2259290, *3 (10th Cir. 2006) (quoting *Pena*, 143 F.3d at 1366 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).

[6] *Id.* (quoting *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994)).

[7] *Id.* (citing *United States v. Abdenbi*, 361 F.3d 1282, 1288 (10th Cir. 2004)).

[8] *See United States v. Kimoana*, 383 F.3d 1215, 1222-23 (10th Cir. 2004) (discussing factors showing whether consenting party had authority over shared

7

finds that Defendant verbally consented to the search within moments of voluntarily entering the living room. There was no use of threats, or intimidation. Defendant did appear dejected, an understandable emotion in the circumstances, but there is nothing to show that he did not understand the request. Contrary to Defendant's argument, the Court finds the testimony was clear that Defendant was consenting to the officers searching his room and not his vehicle. The Court finds that Defendant freely and voluntarily gave his consent to search his room and retrieve his "stuff"—meaning he understood they were requesting permission to search for drugs. Where the officers obtained such specific verbal consent they were not required to also obtain his written consent.

Having determined that there was voluntary consent to the warrantless entry of the apartment and to the search of both the apartment and Defendant's room, the Court need not address the parties' other arguments.

## IV. ORDER

For the reasons set forth above, it is therefore

ORDERED that Defendant's Motion to Suppress (Docket No. 14) is DENIED. It is further

---

premises).

ORDERED that the time from the filing of the Motion to Suppress through the date of the new trial setting is excluded from the computation of Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).  Trial will be re-set by separate notice.

DATED   November 27, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge